**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

Nyle Anderson,

      Appellant,

    v.

Frank C. Nelsen,

      Appellee.

Case No.: 25-cv-50090

Judge Iain D. Johnston

MEMORANDUM OPINION AND ORDER

This case is on appeal from the Northern District of Illinois Bankruptcy Court. The Bankruptcy Court granted debtor Frank Nelsen's motion to convert his bankruptcy petition from Chapter 11 to Chapter 7. ECF Bankruptcy Case No. 23-b-81464, dkt. 27. It simultaneously denied creditor Nyle Anderson's motion to dismiss as moot. Anderson appealed. For the following reasons, the Court affirms the Bankruptcy Court's decision.

**Background**

In November 2023, Nelsen filed a voluntary Chapter 11 petition for bankruptcy. Dkt. 1-5 (Bankruptcy Court Opinion) at 1. His schedules showed three creditors: He owed $5,736,000.00 to Anderson, only $141,342.64 of which was secured. Dkt. 10 at 1. He owed the IRS $89,329.52 and the Illinois Department of Revenue $19,468.48. [1]

---

[1] For precise figures and the tax debt's character, see the Bankruptcy Court opinion (dkt. 1-5 at 1–2).

In February 2024, Anderson filed his first motion to dismiss Nelsen's petition. ECF Bankruptcy Case No. 23-b-81464, dkt. 30. In that motion, Anderson highlighted Nelsen's sizable bank transactions in the years preceding the bankruptcy petition. *Id.* He further argued that Nelsen filed his petition in bad faith, reasoning that the bankruptcy constituted a "two-party" dispute, and that plan confirmation wasn't possible. *Id.* After briefing, the Bankruptcy Court held an evidentiary hearing (the "April 2024 Trial") at which Nelsen and Anderson testified and the Bankruptcy Court received exhibits into evidence. *Id.* at 3. The Bankruptcy Court addressed Anderson's arguments that the petition involved a two-party dispute, concluding that to the extent that was true, it didn't constitute *per se* bad faith. *Id.* It left confirmability objections to the confirmation hearing. *Id.*

Nelsen later submitted a Chapter 11 reorganization plan. *See id.* at 5 for details. Anderson objected to the plan, and neither the IRS nor the IDOR completed their ballots. On November 6, 2024, recognizing that the plan couldn't be confirmed with Anderson's vote, Nelsen announced that he would seek to convert his case to Chapter 7. *Id.* Anderson said he would file another motion to dismiss. Nelsen filed his motion on November 13, and Anderson filed his later that day. The U.S. Trustee filed a motion to dismiss or, in the alternative, a motion to convert.

The cross-motions were "fully briefed, after which the [Bankruptcy] Court heard oral argument. During that hearing, all took the position that the court could rule on the motions based on the testimony and evidence received at the April 2024 Trial as well as the [Bankruptcy] Court's docket. With the consent of all movants,

the Court continued the cross-motions for ruling," and allowed the parties to file additional briefing.  *Id.*  Anderson's recollection matches the Bankruptcy Court's, acknowledging that "[t]he cross-motions were fully briefed at which the [Bankruptcy] Court heard oral argument.  *During that hearing, the parties all took the position that the [Bankruptcy] Court could rule on the motions based on the testimony and evidence received at the April 2024 Trial.  With the consent of all*" the Bankruptcy Court did so.  Dkt. 10 at 3 (emphasis added).

The Bankruptcy Court concluded that Nelsen had a right to convert his bankruptcy petition.  It reasoned that none of the statutory exceptions in 11 U.S.C. § 112(a) negated that right.  Nor did the non-textual *Maarama v. Citizens Bank* apply either, because Anderson hadn't sufficiently demonstrated that Nelsen filed his petition in bad faith.  So, the Bankruptcy Court granted Nelsen's motion to convert and denied Anderson's and the UST's motions to dismiss as moot.  Anderson appealed.

**Standard of Review**

District courts review a bankruptcy court's factual findings for "clear error" and legal conclusions *de novo.  See In re Dimas*, 14 F.4th 634, 639–40 (7th Cir. 2021). A factual finding is clearly erroneous only where a court is "left with the definite and firm conviction that a mistake has been committed." *In re Veluchamy*, 879 F.3d 808, 814 (7th Cir. 2018).  "Or, the factual decision must strike [a court] as more than just maybe or probably wrong; it must . . . strike [it] as wrong with the force of a five-

week-old, unrefrigerated dead fish." *Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988).

A court's conclusions regarding the legal standard applicable to good faith determinations are questions of law reviewed under the *de novo* standard. *In re Love*, 957 F.2d 1350, 1354 (7th Cir. 1992) (citing *United States v. Singer Mfg. Co.*, 374 U.S. 174, 193 (1963)). However, a court's good or bad faith finding is a "purely factual finding evaluated under the clearly erroneous standard." *Id.* As Anderson recognizes, the party asserting a bad faith filing "ha[s] the burden to prove facts supporting [his] objection." Dkt. 10 at 15; *see also* 7 Collier on Bankruptcy ¶ 1112.04 (16th ed. 2025) ("[I]f the issue is whether the petition was filed in good faith, the movant bears the initial burden to make a *prima facie* showing to support the allegation of bad faith, but if the movant does so, the ultimate burden rests on the bankruptcy petitioner to demonstrate good faith.").

In Reply, Anderson includes a discussion about the proper standard, but concludes without explanation that the Court should review—apparently the entire decision—de novo. *See* dkt. 12 at 2. In light of the contradictory decisions noted above, the Court rejects Anderson's formulation.

**Analysis**

*Right to Convert*

Anderson identifies a number of interrelated issues on appeal, but only discusses some of them later in his brief. The Court starts with the Bankruptcy's

Court's decision to grant Nelsen's motion to convert. If the Bankruptcy Court didn't err in doing so, then it didn't err in denying the motion to dismiss as moot.[2]

Section 1112(a) provides that "[t]he debtor may convert a case under this chapter to a case under chapter 7 of this title unless" one of three statutory exceptions apply. Anderson "agrees with the [Bankruptcy] Court on the issue that the exceptions under 11 U.S.C. § 1112(a) do not apply to the fact pattern on this case." Dkt. 10 at 16.

Before the Supreme Court's decision in *Marrama v. Citizens Bank of Mass.*, some courts had suggested that a debtor had an "absolute right to convert" his petition, so long as the statutory exceptions didn't apply. *See* 549 U.S. 365, 368 (2007); *see also* 7 Collier on Bankruptcy ¶ 1112.04 (16th ed. 2024). (The statute "appears to give the debtor an absolute right to convert a Chapter 11 case to case under Chapter 7."). But the Supreme Court concluded otherwise, holding that a debtor may forfeit his right to convert his petition if he engaged in "bad faith" before or during the filing. *Id.* at 367. Though *Marrama* addressed a Chapter 7-to-Chapter 13 petition under 11 U.S.C. § 706(a), Section 1112(a) is conceptually and textually similar. The Bankruptcy Court held, and the Parties don't challenge that *Marrama*'s bad faith exception extends to Section 1112(a) conversions. The Court now turns to what constitutes "bad faith."

*Bad Faith Definition*

---

[2] Anderson doesn't identify a legal problem in the Bankruptcy Court's order of operations. Intuitively, it makes sense to address the conversion first. In any event, the analysis is essentially identical, because both motions turn on whether Nelsen acted in good faith.

As the Bankruptcy Court explained, "good or bad faith 'should be determined by looking to the totality of the circumstances.'" Dkt. 1-5 at 16 (citing *In re Love*, 957 F.2d at 1355.[3]) The Seventh Circuit "has refused to adopt a specific test or definition of good faith. Instead, [it] has held that good faith is a term incapable of precise definition, and, therefore, the good faith inquiry is a fact intensive determination better left to the discretion of the bankruptcy court." *In re Love*, 957 F. 2d at 1355.

In its opinion, the Bankruptcy Court noted the "nonexhaustive list" of some factors that the *In re Love* Court and others consider in evaluating good faith:

> whether the debt would be nondischargeable in a Chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

Importantly, Anderson doesn't challenge the Bankruptcy Court's good faith formulation. Nor does he allege that any one factor constitutes *per se* bad faith. In any event, such an argument would be inconsistent with *In re Love*. So, Anderson doesn't identify a *legal* error in the Bankruptcy Court's decision; he doesn't assert that the Bankruptcy Court considered irrelevant factors or otherwise misinterpreted the totality of the circumstances test. Further, Anderson doesn't challenge—indeed

---

[3] *In re Love* discussed a Chapter 13 case, but the rationale extends to this case.

agrees with—the Bankruptcy Court's burden allocation, holding that Anderson bore the responsibility of showing *prima facie* bad faith. *See* dkt. 1-5 at 9; dkt 10 at 16 (Anderson citing caselaw that "the burden of proving a lack of good faith . . . is on the party opposing the conversion."). Reviewing that formulation *de novo*, this Court agrees with the Bankruptcy Court's formulations.

*Bad Faith Analysis*

Next, the Court considers whether the Bankruptcy Court clearly erred in conducting that bad faith inquiry. In his opening brief, Anderson identifies the following facts as supporting a bad faith determination: Quoting directly from his motion in the Bankruptcy Court, he argues that this case involves only a "two-party dispute," and that Nelsen filed it as "a litigation tactic" to obtain a better forum. Dkt. 10 at 10. He says it was never possible to confirm a Chapter 11 plan, because Nelsen wouldn't agree to it. *Id.* He asserts that Nelsen had the money to pay Anderson before Nelsen filed, citing a string of substantial bank transactions (some involving more than $1 million) in the years preceding the petition. *Id.* at 10–11. And he claims that the timing, "immediately before a hearing on Motions for Turnover and Rule to Show Cause," further reveals bad faith. *Id.* at 11. Elsewhere he contends that Nelsen filed the petition because Anderson has stage-four cancer and Nelsen, as of now, has an insurable interest in Anderson's life insurance policy. *Id.* at 8.

Knowing these same facts (because Anderson raised them verbatim below), the Bankruptcy Court said they showed "scant evidence" of bad faith. Dkt. 1-5 at 16. Addressing the confirmation issue, the Bankruptcy Court reasoned that Anderson

7

hadn't demonstrated that Nelsen "engaged in undue delay or never intended to reorganize," nor did Anderson show that Nelsen was "solely to blame." *Id.* at 18. The Bankruptcy Court addressed the insurance policy concerns, *id.* at 20–22, and the allegedly concealed transactions, *id.* at 23. It also evaluated the claim that there were no assets for distribution. *Id.* at 25. Weighing all of that, the Bankruptcy Court nevertheless concluded that such conduct didn't constitute bad faith.

On this Court's own review, the Bankruptcy Court's decision passes the smell test. None of the allegations, on their own, constitute *per se* bad faith. To the extent they show Nelsen's efforts to mitigate his debts, as the Bankruptcy Court explained, it "is not bad faith to seek to gain an advantage from declaring bankruptcy—why else would one declare it?" *Id.* at 17 (citing *In re James Wilson Assocs.*, 965 F.2d 160, 170 (7th Cir. 1992).) Anderson doesn't carry his burden to show that Nelsen abused the bankruptcy system such that a court should deny Nelsen his right to convert.

*Waiver*[4]

Despite the Bankruptcy Court's careful analysis, Anderson contends that the Bankruptcy Court ignored evidence. Had the Bankruptcy Court considered the evidence, Anderson claims, it would have found bad faith. The proof: because the Bankruptcy Court didn't find *bad faith*, it must have ignored the evidence. *See, e.g.*, dkt. 12 at 9–10. Anderson doesn't pinpoint what exactly the Bankruptcy Court missed or why it would have changed the result. He instead summarily concludes

---

[4] Nelsen argues that both judicial estoppel and waiver doctrines foreclose Anderson's arguments. Though either would achieve Nelsen's goals, the Court believes waiver is a more appropriate vehicle. So, it doesn't address the estoppel arguments.

that "based on the opinion, the [Bankruptcy] Court did not review all the arguments." *Id.* at 5.

To the extent the Bankruptcy Court *did* miss something that a (second) trial would have revealed, Anderson waived his right to one. In his opening brief, Anderson conceded that during the November 2024 hearing, "the parties all took the position that the [Bankruptcy] Court could rule on the motions based on the testimony and evidence received at the April 2024 Trial. With the consent of all" the Bankruptcy Court did so. But Anderson crawfishes in Reply, saying "[Nelsen] looks to one sentence in [Anderson's] Brief and draws an incorrect conclusion that it is incongruous for Anderson to now argue on appeal that the Bankruptcy Court 'denied' him the 'opportunity to present evidence and testimony.'" Dkt. 12 at 3.

Nelsen's right. During the November 2024 hearing, Anderson indisputably waived his right to present additional evidence at a trial. He argues now that he only waived that right so long as the Bankruptcy Court reviewed the entire record. And because he contends "based upon the language of opinions stating that Anderson offers scant evidence . . . it appears that many of the arguments and evidence presented to the court went unnoticed and were instead ignored by [the] court," he concludes he didn't waive the right. *Id.* The Court doesn't find that argument persuasive. The Bankruptcy Court gave Anderson the opportunity to present evidence for the second time, and Anderson declined the invitation, waiving his right to challenge it now.

*Remaining Issues*

9

Anderson appears to raise four issues on appeal but he only discusses with any detail the order granting the conversion and, by extension, the *Marrama* exception. *See* dkt. 10 at 5–6. As to the other issues: Because the Bankruptcy Court didn't clearly err in granting the motion to convert, it didn't err in denying the motion to dismiss as moot. Next, the Court agrees with the Bankruptcy Court that *Law v. Siegel* forecloses the argument that courts have discretion to deny motions to convert based on the "may" language in Section 1112(a). *See* 571 U.S. 415 (holding that similar "may" language in Section 522(b) gave discretion to the *debtor* not the court).

***

The Bankruptcy Court's opinion shows a careful and through examination of the evidence presented throughout the bankruptcy proceedings. On that record, the Bankruptcy Court concluded that Anderson didn't carry his burden of showing bad faith. Anderson doesn't identify any legal errors. His factual claims on appeal mirror those presented below, and in any event, he waived the right to raise new ones. The Court therefore affirms the Bankruptcy Court's decision to grant Nelsen's motion to convert.

**Conclusion**

For the above reasons, the Court affirms the Bankruptcy Court's decision.

Entered: July 10, 2025          By:_____

                                          Iain D. Johnston
                                          U.S. District Judge